**IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| THE FLIGHTSTAR CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: 2:18-cv-02131 |
| ) | |
| JETLUX, INC., ) | JURY DEMAND |
| TOMER OSOVITZKI, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

NOW COMES Plaintiff, THE FLIGHTSTAR CORPORATION ("Flightstar"), by and through its attorneys, Meyer Capel, A Professional Corporation, and for its Complaint against Defendants JETLUX, INC. ("JetLux") and TOMER OSOVITZKI ("Osovitzki"), states as follows:

### NATURE OF THE ACTION

1.    In early 2018, Flightstar provided three charter flights to Defendants JetLux and Osovitzki. JetLux held itself out as a legitimate broker of charter flights to executives, celebrities, and other end-user consumers. Osovitzki is JetLux's chief executive officer.

2.    Defendants purported to make payment with first one and then another American Express credit card. When they were declined, Defendants represented that the cards were valid, that they had spoken with American Express, and that American Express had advised that the charges would be approved using manual authorization with new authorization codes. Defendants represented that American Express had provided them with authorization codes for this purpose, and instructed Flightstar to run the charges again with those authorization codes. Flightstar did so, was told the

1

charges were approved, and through JetLux's brokerage, Flightstar provided two flights for a JetLux client, and one flight to Osovitzki personally.

3. As Flightstar subsequently discovered, however, the credit card that Defendants ultimately used to make payment had been cancelled months before, and Defendants themselves had generated the "authorization codes" that they provided. Flightstar had become a victim of a credit card scam known as "force posting."

4. Flightstar brings this action for breach of contract, common law fraudulent misrepresentation, common law fraudulent concealment, and violation of the Illinois Consumer Fraud Act. Flightstar seeks compensatory damages of at least $262,075.28, as well as punitive damages, attorney's fees, costs, interest, and other appropriate relief.

## PARTIES

5. THE FLIGHTSTAR CORPORATION is an Illinois corporation with its principal place of business at 7 Airport Road, Savoy, Illinois 61874.

6. JETLUX, INC. is a Florida corporation with its principal place of business at 2999 NE 191 St., Suite 600, Aventura, Florida 33180.

7. TOMER OSOVITZKI is the CEO of JetLux. His business address is 2999 NE 191 St., Suite 600, Aventura, Florida 33180. On information and belief, his residential address is 20191 E. Country Club Dr., Apt. 1907, Aventura Florida 33180.

## JURISDICTION AND VENUE

8. Diversity jurisdiction exists pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and is between citizens of different States, namely, Illinois and Florida.

9. Flightstar is an Illinois corporation with its principal place of business in Savoy, Illinois. Flightstar is a citizen of Illinois for purposes of diversity jurisdiction.

10. JetLux is a Florida corporation with its principal place of business in Aventura, Florida. JetLux is a citizen of Florida for purposes of diversity jurisdiction.

11. Osovitzki's domicile is in Aventura, Florida. He is a citizen of Florida for purposes of diversity jurisdiction.

12. This Court has personal jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4(k) and 735 ILCS 5/2-209(a) in that the claims at issue arose out of Defendants' transaction of business within this State, commission of tortious acts within this State, and the making and performance of contracts connected with this State.

13. Venue is proper under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims at issue occurred in this District.

## FACTS COMMON TO ALL COUNTS

14. Flightstar is the fixed base operator at Champaign-Urbana's Willard Airport. As part of its aviation services operations at the Airport, Flightstar maintains a fleet of aircraft that it makes available for charter flights.

15. JetLux is a broker that holds itself out to the public as a "premier charter provider," brokering charter flights and re-selling these flights to executives, celebrities, and others as part of its "luxury aircraft travel solutions." See http://www.jetlux.com.

16. Osovitzki was, and is, JetLux's chief executive officer.

17. Camila Febus ("Febus") was, and is, Osovitzki's executive assistant.

18. At all times relevant to this Complaint, JetLux acted through and was liable for all actions of Osovitzki, who was acting within the scope of his employment and on behalf of JetLux.

19. At all times relevant to this Complaint, Osovitzki was personally involved in and responsible for the misconduct at issue, and acted personally and/or through Febus. Osovitzki ordered, directed, and was liable for Febus.

### —The Initial Flight—

20. In January 2018, Defendants contacted Flightstar in Illinois to solicit a quote for a round trip charter flight from Van Nuys, California to Teterboro, New Jersey (the "Initial Flight").

21. Flightstar quoted the Initial Flight at $156,732.92. Defendants accepted the quote. A true and correct copy of the quote is attached as Ex. 1.

22. Between January 25, 2018 and February 5, 2018, Defendants purported to make the $156,732.92 payment for the Initial Flight as follows: Febus, at Osovitzki's direction, provided an American Express credit card ending in '2002 ("AmEx Card #2002"), which was declined, and then an American Express credit card ending in '1009 ("AmEx Card #1009"), which was also declined. When Flightstar informed Defendants of this, Osovitzki represented that he had spoken to American Express and American Express had confirmed the cards were valid. He stated that American Express had provided him with authorization codes to use to have the charges approved. Osovitzki instructed Flightstar to run the charge again using AmEx Card #2002, and to use authorization codes 181442 and 309211 to cause the transaction to go through. Flightstar ran the authorization codes and obtained approval of the charge.

### —The Extended Flight—

23. Defendants subsequently contacted Flightstar in Illinois to extend their charter of this same aircraft to include a flight from Van Nuys, California to Minneapolis,

4

Minnesota for the Super Bowl weekend for an additional $65,036.50 (the "Extended Flight").

24. On February 2, 2018, Defendants purported to pay for this $65,036.50 for the Extended Flight in the same manner: Febus, at Osovitzki's direction, instructed Flightstar to charge this flight to AmExCard #2002, representing that Osovitzki had spoken to American Express and obtained an authorization to override the declination of the charge, and providing Flightstar with authorization code 482081 in order to obtain approval. Flightstar used the authorization code and obtained approval of the charge.

25. Flightstar subsequently informed Defendants that they owed $9,183.17 for additional costs and charges, including special event and catering charges, for the Initial Flight and Extended Flight. A true and correct copy of the invoice for the Initial Flight, Extended Flight, and these additional charges, is attached as Ex. 2.

26. On February 20, 2018, Defendants purported to pay this additional $9,183.17 for the Initial and Extended Flight in the same manner: Febus, at Osovitzki's direction, instructed Flightstar to charge this flight to AmExCard #2002, representing that Osovitzki had spoken to American Express and obtained an authorization to override the declination of the charge, and providing authorization code 850261 in order to obtain approval. Flightstar used the authorization code and obtained approval of the charge.

—The Osovitzki Flight—

27. Defendants also contacted Flightstar in Illinois to solicit a quote for a different aircraft to fly from Minneapolis, Minnesota to Fort Lauderdale, Florida. In contrast to the previous flights, which JetLux had brokered and re-sold to a JetLux client, Flightstar understood that this flight, also brokered by JetLux, was for Osovitzki's

personal use. Flightstar quoted this flight (the "Osovitzki Flight") at $31,122.69. Defendants accepted the quote. A true and correct copy of the relevant quote and invoice is attached as Exs. 3 - 4.

28. On February 5, 2018, Defendants purported to pay this $31,122.69 for the Osovitzki Flight in the same manner: Febus, at Osovitzki's direction, instructed Flightstar to charge this flight to AmExCard #2002, representing that Osovitzki had spoken to American Express and obtained an authorization to override the declination of the charge, and providing authorization code 740391 in order to obtain approval. Flightstar used the authorization code and obtained approval of the charge.

### —Defendants' Fraudulent Conduct—

29. Flightstar has since discovered that Defendants' purported payments were fraudulent, and that the credit card Defendants used, AmExCard #2002, was not valid, and had been cancelled several months previously, in August 2017. Flightstar also learned that Osovitzki had not obtained valid authorization codes from American Express, but had instead provided Flightstar with false authorization codes that Defendants themselves had generated as part of a credit card scam known as "force posting."

### COUNT I – BREACH OF CONTRACT (AGAINST JETLUX)

30. Flightstar restates and re-alleges the allegations set forth in paragraphs 1 through 29 of this Complaint as though fully set forth herein.

31. Flightstar and JetLux entered into valid and enforceable contracts regarding the charter of the Initial Flight, the Extended Flight, and the Osovitzki Flight (collectively the "Flights.")

32. Flightstar fully performed its obligations under the contracts.

6

33. The contracts required JetLux to pay for the Flights.

34. JetLux breached these contracts by failing to pay for the Flights.

35. As a direct and proximate result of these breaches, Flightstar has suffered damages of at least $262,075.28.

WHEREFORE, Plaintiff prays for judgment in its favor, to include:

   a. Compensatory damages of at least $262,075.28.

   b. Interest;

   c. Costs of suit;

   d. Such further relief as the Court deems just and proper.

### COUNT II – COMMON LAW FRAUDULENT MISREPRESENTATION
### (AGAINST JETLUX AND OSOVITSKI)

36. Plaintiff restates and re-alleges the allegations set forth in paragraphs 1 through 35 of this Complaint as though fully set forth herein.

37. In providing AmEx Card #2002, Defendants represented that the card was valid and impliedly represented a then-present intent to pay for the Flights.

38. Defendants further represented that they had communicated with American Express, and that American Express had provided valid authorization codes to allow the transactions to be approved.

39. Defendants' representations were false. Defendants knew AmEx Card #2002 was not valid, and had been cancelled in August 2017, months before Defendants provided it to Flightstar to pay for the Flights. Defendants had no intent to pay for the Flights. American Express had not authorized the transactions or generated the authorization codes. Defendants had generated the authorization codes themselves, and the authorization codes were not valid.

40. Defendants' representations were material in that they went directly to the issue of payment for the Flights.

41. Defendants made the representations knowing that they were false.

42. Defendants made the representations in order to induce Flightstar to provide the Flights and to allow Defendants to obtain the benefit of those Flights without paying for them.

43. Flightstar reasonably relied on the truth of Defendants' representations in that JetLux held itself out as a legitimate broker of charter flights, and Osovitzki held himself out as JetLux's CEO.

44. Flightstar has suffered damages as a result of its reliance.

45. Defendants' conduct was willful and wanton and of such aggravated character as to warrant an award of punitive damages.

WHEREFORE, Plaintiff prays for judgment in its favor to include:

   a. Compensatory damages of at least $262,075.28;
   b. Punitive damages;
   c. Interest;
   d. Costs of suit;
   e. Such further damages as the Court deems just and proper.

**COUNT III – COMMON LAW FRAUDULENT CONCEALMENT**
**(AGAINST JETLUX AND OSOVITSKI)**

46. Plaintiff restates and re-alleges the allegations set forth in paragraphs 1 through 45 of this Complaint as if fully set forth herein.

47. Defendants had a duty to disclose all facts basic to the transaction, including the cancellation of AmEx Card #2002 prior to Defendants' use of it to pay for

the Flights, and the source and validity of the authorization codes. Defendants knew Flightstar was entering into the transactions at issue based on Defendants' misrepresentations and Flightstar's mistake as to the truth of this information. Such disclosure would be reasonably expected.

48. Defendants intentionally withheld and concealed these facts.

49. These representations were material in that they went directly to the issue of payment for the Flights.

50. Defendants withheld and concealed these facts with the intent to deceive and induce Flightstar into a false belief that Defendants had a then-present ability and intent to pay, in order to allow Defendants to obtain the benefit of the Flights without paying for them.

51. Flightstar reasonably relied upon the facts as it believed them to be, in that JetLux held itself out as a legitimate broker of charter flights, and Osovitzki held himself out as JetLux's CEO.

52. Flightstar has sustained damages as a result of its reliance.

53. Defendants' conduct was willful and wanton and of such aggravated character as to warrant an award of punitive damages.

WHEREFORE, Plaintiff prays for judgment in its favor to include:

  a. Compensatory damages of at least $262,075.28.

  b. Punitive damages;

  c. Interest;

  d. Costs of suit;

  e. Such further damages as the Court deems just and proper.

**COUNT IV – ILLINOIS CONSUMER FRAUD ACT, 815 ILCS 505/1 et seq.**
**(AGAINST JETLUX AND OSOVITSKI)**

54. Plaintiff restates and re-alleges the allegations set forth in paragraphs 1 through 53 of this Complaint as though fully set forth herein.

55. Defendants' misrepresentations and material omissions made during the course of their purported payment for the Flights constitute deceptive acts or practices under the Illinois Consumer Fraud Act.

56. Defendants intended that Flightstar rely on this deception.

57. The deception occurred in conduct involving trade or commerce.

58. The deception proximately caused injury to Flightstar in that Defendants obtained use of the Flights without making payment to Flightstar.

59. Defendants' conduct raises consumer protection concerns. On information and belief, Defendants have engaged in similar conduct with others, and have resold fraudulently obtained flights to unsuspecting consumers, involving them in fraudulent conduct.

60. Defendants' conduct was outrageous, and done with such reckless disregard for the rights of others as to warrant an award of punitive damages.

WHEREFORE, Plaintiff prays for judgment in its favor to include:

   a. Compensatory damages of at least $262,075.28;

   b. Punitive damages;

   c. Interest;

   d. Costs and attorney's fees under 815 ILCS 505/10a(c);

   e. Such further damages as the Court deems just and proper.

**JURY DEMAND**

Plaintiff, THE FLIGHTSTAR CORPORATION, hereby demands a trial by jury.

        THE FLIGHTSTAR CORPORATION, Plaintiff,

        By: _____s/Travis J. Quick_____

        Travis J. Quick, ARDC# 6280905
        MEYER CAPEL, A Professional Corporation
        306 West Church Street
        Champaign, Illinois 61820
        Phone: 217.352.1800
        Fax: 217.352.1083
        tquick@meyercapel.com

        *Attorneys for Plaintiff*